In the Matter of the Judicial Settlement of the Account of ROBERT C. REEVES, as Sole Executor, etc., of ABRAHAM DENIKE, Deceased.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Executors. Specific legacies.*—Where an executor has no more than sufficient funds to pay the specific legacies, he will not be required to pay anything to the residuary legatees.
2. *Costs.*—An amount inserted in the executor's bill of costs as a disbursement for referee's fees, and properly verified by the affidavit of the attorney, should not be reduced without counter-proof of its incorrectness.

Appeal by an executor from a decree of the surrogate's court settling his accounts.

*Henry W. Bates,* for appellant.

*Henry J. Morris,* for Charles W. Denike and other residuary legatees, respondents.

BARTLETT, J.—The decree from which the executor appeals declares that the balance in his hands on the 17th day of December, 1883, to be accounted for, was $21,990.75. This amount was made up in part of a bond and mortgage executed by John Flin and wife to the appellant's testator, which was orginally inventoried as a cash asset. The executor appears subsequently to have complained because this Flin mortage was treated as cash, when it was, in fact, but a chose in action, and a doubtful security at best; and it seems that Surrogate Rollins held that he was not to be deemed liable on the mortgage, but was to be charged with the amount stated in the inventory, that is to say, the full $5,000, and to be credited with such portion as should be shown to have been lost without his fault.

The same view as to the liability of the executor on account of this mortgage, was evidently entertained by the present surrogate, for, in the decree under review, it is declared that the balance of $21,990.75, with which the executor is chargeable as of the date December 17, 1885, is " subject to a deduction for any losses to be shown on the Flin mortgage in the subsequent accounting."

By the use of this language it is apparent that the learned surrogate intended to treat the Flin mortgage, not as a cash asset in the hands of the executor, but as an asset, the precise value of which could not be determined at the time the decree was made; and in thus regarding it, he did no more than simple justice to the executor, for it would be manifestly unfair to charge him absolutely with this bond and mortgage

as cash, when it appeared that he had not been able to realize upon it.

After stating the balance with which the executor was chargeable, subject to the deduction for any losses on account of the Flin mortgage, as already set forth, the decree proceeded to direct, at the end thereof, that out of the money remaining in his hands, the executor should distribute and pay to Elizabeth A. Burnham, Charles W. Denike and Abraham Denike, the residuary legatees under the will the sum of $2,000 each. To this portion of the decree there could be no valid objection, if it appeared that the executor had enough money on hand to make the payments; but, on the contrary, it appears that he had not. From the balance of $21,990.75 must be deducted, first, $5,000 on account of the Flin mortgage as being doubtful security in the hands of the executor, and secondly, the expense of the accounting and the commissions of the executor, which amounted in all to $499.58. These deductions would leave on hand $16,491.17. But specific legacies to the amount of $23,000 were left by the testator to religious and charitable institutions, and although the validity of these legacies is being tested, it is necessary, of course, for the executor to reserve an amount sufficient to pay them, together with the interest thereon, in case they shall be sustained. Indeed, it is stated in the brief of the counsel for the appellant, that two of these legacies, amounting in the aggregate, with interest, to about $17,000, have already been adjudged valid.

Under these circumstances it is apparent that unless the Flin mortgage is regarded as a cash asset the executor upon the accounting under review has on hand less than enough to pay the specific legacies due from the estate. As we have already seen, the surrogate has himself expressly and, as we think, very properly refused to treat the Flin mortgage as cash, but has left its real value to be determined hereafter. So far as appears, therefore, the executor has not more than sufficient funds to pay the specific legacies,

and he should not be required to pay anything to the residuary legatees.

As to the other objection to the decree there is only one which we deem tenable. We are not disposed to interfere with the determination of the surrogate as to the value of the legal services rendered to the appellant.

As to the claim that the executor should have been allowed a larger amount by way of commissions because he was a trustee of a large portion of the estate, it need only be said that the papers do not disclose what property he held as trustee as distinguished from that which he held as executor. We are unable to find anything in the record, however, which authorized the surrogate to decrease the referee's fees from $174 to $132.79. The appeal book contains a letter from the referee, which may be regarded as equivalent to a certificate, showing that there had been actual hearings before him on fourteen different days, that he had spent five days in the preparation of his report, and that there had been ten adjournments at the request of the parties when the referee was ready to go on. He therefore charged for twenty-nine days at six dollars, making $174 in all. This amount was inserted in the executor's bill of costs as a disbursement, and the affidavit of the attorney stated that the disbursements mentioned in such bill of costs had been actually made or necessarily incurred. Under these circumstances, without any proof to dispute the statements of the referee or show that the charge was erroneous, it is difficult to understand why the amount was reduced to $132.79, and particularly how the fraction of a dollar came to be fixed as a proper part of the charge. Even if only half fees were allowed for adjournments the referee would be entitled to $134.

The decree should be reversed so far as it directs the payment of $2,000 apiece to the residuary legatees. That portion thereof which fixes the referee's fees at $132.79 should also be reversed, and the matter of the referee's fees should

be remitted to the surrogate for re-taxation. In all other respects the decree should be affirmed, but the executor should be allowed his costs and disbursements on this appeal to be paid out of the estate.

VAN BRUNT, P.J., and MACOMBER, J., concur.